IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
02 FEB -5 PH 3:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

RAYMOND ROBERTS,                  ]
                                  ]
            Petitioner,           ]
                                  ]
vs.                               ]        CIVIL ACTION NO. 95-AR-2553-M
                                  ]
                                  ]
WARDEN RON SUTTON and             ]
THE ATTORNEY GENERAL FOR          ]
STATE OF ALABAMA,                 ]
                                  ]
            Respondents.          ]

ENTERED
FEB - 5 2002

## MEMORANDUM OF OPINION

This is a petition for a writ of habeas corpus brought by a person in custody under a judgment of a court of the State of Alabama. 28 U.S.C. § 2254. On November 16, 2001, the magistrate judge entered a report and recommendation, recommending that the petition be dismissed. The petitioner filed objections to the report and recommendation on December 6, 2001.

In his objections, the petitioner questions the denial of his August 9, 2000 "Motion for Discovery Production of documents," in which he sought to obtain a transcript of the opening and closing arguments at his trial. The magistrate judge denied the motion on March 19, 2001, with the notation that the court would obtain the information if it proved to be necessary to the case. Roberts asserts that "[d]enying petitioner discovery hinders petitioner from exploring factual allegations but also refuting factual defenses asserted by the state." He



adds that "Rule 6 warrants discovery whenever it would help the court make a reliable determination with respect to the petitioner's claim."

Roberts argues that discovery of the transcript would have generated information establishing that his claim is "so clearly meritorious that relief must be granted." Roberts maintains that "there was no overwhelming evidence to show petitioner [sic] guilt, therefore the state's case was centered around there [sic] theory of what the details were." Roberts claims that the transcript would "show the prosecutor testifying before the jury to what he called (facts of his knowledge) without the support of testimony or a[n] objection from petitioner's att[orney]." He adds that the prosecutor's remarks were "improper and inflamed the jury into believing details of the crime that was [sic] not supported by any testimony from trial." Roberts claims that the opening and closing arguments show these remarks, but he was not able to obtain copies of the opening and closing statements because "magistrate denied petitioner discovery, but, granted state to include documents to support their contention."[1]

Alabama law does not require court reporters to record the opening or closing arguments of counsel in noncapital cases, unless directed to do so by the judge. *Ala. Code* § 12-17-275;[2] Rule 19.4(b), *Alabama Rules of Criminal Procedure*.[3] It appears that in Roberts'

---

[1] The state was allowed to submit a copy of the trial transcript, which was necessary to the determination of the petitioner's claims. It is that trial transcript that would have contained the opening and closing arguments of counsel if they had been transcribed.

[2] Section § 12-17-275 provides in pertinent part:
The official court reporter shall attend in person, except as otherwise herein provided, the sessions of court held in the circuit for which he is appointed, and in every case, where directed by the judge or requested by a party thereto, he shall take full stenographic notes of the oral testimony and proceedings, **except argument of counsel**, and note the order in which all documentary evidence is introduced, all objections of counsel, the rulings of the court thereon and exceptions taken or reserved thereto. When directed by the judge, he shall attend the investigations of the grand jury and there take such notes of the testimony as directed by the

2

case, the arguments of counsel were not recorded by the court reporter. At the point in the transcript where the opening arguments of counsel were made, the transcript reads:

> (AT WHICH TIME MR. WEATHERS MADE HIS OPENING STATEMENT ON BEHALF OF THE STATE OF ALABAMA.)

> (AT WHICH TIME MR. POWELL MADE HIS OPENING STATEMENT ON BEHALF OF THE DEFENDANT.)

*Respondents' Exhibit G*, p. 59. At the point in the transcript where the closing arguments of counsel were made, the transcript reads:

> (AT WHICH TIME MR. WEATHERS MADE HIS INITIAL CLOSING ARGUMENT ON BEHALF OF THE STATE OF ALABAMA.)

> (AT WHICH TIME MR. POWELL MADE HIS CLOSING ARGUMENT ON BEHALF OF THE DEFENDANT.)

> (AT WHICH TIME MR. WEATHERS MADE HIS FINAL CLOSING ARGUMENT ON BEHALF OF THE STATE OF ALABAMA.)

> WHEREUPON THE FOLLOWING OBJECTION BY MR. POWELL OCCURRED DURING THE FINAL CLOSING ARGUMENT OF MR. WEATHERS:

**Mr. Powell:** We object to that, Judge. He is attempting to tell the jury what the law is and that's improper.

**The Prosecution:** Judge, if I am not mistaken we just had thirty minutes of what the law is.

**Mr. Powell:** I didn't try to tell them what the law said Judge. I told them they could do what they wanted to do.

---

district attorney or foreman. (emphasis added).

[3] Rule 19.4(b)provides:
In all noncapital cases, the court reporter shall take full stenographic notes of the voir dire of the jury and of the arguments of counsel if directed to do so by the judge.

**The Court:** All right.  Well, I will charge on the law after the argument is concluded.  The attorneys have a right to tell you what they think that I will charge you on, what they believe that I will charge you on, but you go by what I say as being the law if it is different than what they say.

(NO FURTHER OBJECTIONS OCCURRED DURING THE FINAL CLOSING ARGUMENT OF MR. WEATHERS.)

*Respondents' Exhibit G*, p. 220-21.  It appears that the opening and closing arguments were not included in the transcript of the trial because they were not recorded by the court reporter.  Thus, any attempt by the petitioner to obtain transcribed copies of the opening and closing arguments likely would have proved futile.  The court also notes that neither in his petition nor in his objections has Roberts identified specific statements made by the prosecutor which the petitioner contends were not supported by the evidence; Roberts merely makes the conclusory assertion that the prosecutor made comments which were not supported by the evidence.

Even assuming that the prosecutor did argue facts that were not in evidence, there is no merit to this claim. The magistrate judge concluded that there was no evidence to indicate that the prosecutor's comments were so egregious as to render the trial fundamentally unfair. The magistrate judge noted that the petitioner testified repeatedly that he got none of the proceeds from the robbery and that he was not involved in the planning or carrying out of the robbery, and that the judge carefully explained the trial process to the jury and instructed the jury on the relevant law. The magistrate judge further noted that before the trial began, the judge explained the trial process, specifically stating that in the opening statements, each party would have a chance to explain what they believed the evidence would show. When the petitioner's attorney objected during the prosecution's closing argument, the trial judge

4

made it clear that although it was the attorneys' right to tell the jury what they believe the judge would charge, the jury had to go by what the judge said the law was.  In his charge to the jury, the trial judge explained that it was the jury's duty to decide what the facts of the case were, based upon the evidence they heard, and weighing the credibility of the witnesses:

> **The Court:** . . . It is your duty to decide from the evidence what the facts are in this case.  Can y'all hear me okay now?  It's your duty to look at the evidence, consider the evidence and decide what are the facts of this case. What happened.  That's the duty of the jury.  Mine is to decide what the law is and to give you the law.  Yours is to decide what the facts are and give me the facts. . . .

*Respondents' Exhibit G*, p. 223.

> **The Court:** . . . In deciding what the facts are in this case, you decide the weight and credibility of any of the evidence in this case.  You decide how much weight or how much believability that you think that any of the evidence in this case ought to have.  In doing that, you apply your common sense and your experiences that you have attained throughout your lifetime.

*Respondents' Exhibit G*, p. 225.  The trial judge went on to charge the jury on the law of reasonable doubt and complicity, making it quite clear that despite what the prosecution might have said about intent not being a requirement, intent was most definitely a prerequisite to finding the petitioner guilty.  He also explained that the indictment was not evidence against the petitioner.  Thus, even without the benefit of a transcript of the opening and closing arguments of counsel, it is clear that the petitioner cannot show that the remarks and questions by the prosecution amounted to prosecutorial misconduct or that his attorney was ineffective for failing to object to the remarks.

Roberts next argues that he is "attempting to prove a claim of ineffective assistance of counsel and the magistrate is hindering petitioner from [his] quest by narrowing the scope of

his claim to specifics and not the over all conduct of att[orney]'s performance." He claims that "[t]o this point [he] has not been allowed to put his exhibits in the record." Roberts claims that:

> in the order from the Magistrate, he made it clear that new allegations, or other documents wouldn't have merit. The Magistrate informed petitioner not to repeat allegation [sic]. Petitioner's allegations were already briefed before the Court, before this order was issued. However, petitioner is being denied the opportunity to include in the record the documents & exhibits that will clearly show that both att[orney]s were ineffective.

He states that "there is a issues [sic]" and that the "finding of the facts cannot be obtained if the court does not allow [him] to include his exhibits for instance 1 letter from att[orney] of trial expressing apology for errors, along with other statements; letter from att[orney] on appeal, stating he would not challenge requested issues on appeal 'because if they prevailed, it would only achieve a new trail [sic].'" He contends that he has not been able to place these exhibits in the record "because of the manner that courts have use[d] to avoid the whole scope of the issues." "However the state was allowed to add exhibits after filing brief."

First, the magistrate judge notes that the scope of the petitioner's ineffective assistance of counsel claim has not been "narrowed" as the petitioner suggests. The report and recommendation addressed each of the ineffective assistance of counsel claims raised by the petitioner in his petition, as set forth by the Eleventh Circuit Court of Appeal in *Roberts v. Sutton*, 217 F.3d 1337, 1339 n. 3 (11th Cir. 2000). If anything, the court broadened the scope of some of his issues, in an effort to determine the true nature of his claims, since many of the claims were extremely vague.

Since filing his petition in 1995, Roberts has never made a claim that the overall performance of his attorneys was substandard. He has certainly had ample time during the course of the proceedings on his petition to present such a claim if he so desired. Roberts seeks to blame the court for his failure to raise this claim, by referring to the following language in the report and recommendation:

> The right to file objections is not an opportunity to make new allegations or present additional evidence. New allegations raised or additional evidence presented in the objections will not be considered by the court.

The only time this language was directed toward the petitioner was in the magistrate judge's report and recommendation. At any time prior to the report and recommendation, the petitioner could have sought to add claims to his petition or to submit any exhibits he felt were necessary to support his claims. Instead, the petitioner waited until after the report and recommendation was entered to mention that he had meant to claim that the overall performance of his attorneys was inadequate and that he had other exhibits that would support his other claims.

The court finds that even if the petitioner were now allowed to amend his petition to add a claim that his attorneys' overall performance was ineffective and to submit a letter from his trial attorney apologizing for any errors he made and a letter from his appellate counsel stating that he would not raise the issues urged by the petitioner on appeal because they would only achieve a new trial, the outcome of his petition would be no different. Based on the evidence already before the court, it is clear that the overall performance of the petitioner's attorneys was not deficient. Moreover, even if the letters mentioned by the petitioner were made a part of the record, they would not establish that the overall

performance of the petitioner's attorneys was deficient or that any of his individual claims of ineffective assistance of counsel are meritorious.

The petitioner points out that the respondents were allowed to "add exhibits after filing brief." In fact, the respondents were allowed to submit an exhibit, the transcript of the petitioner's trial, on August 27, 2001. The trial transcript had not been submitted earlier, because the respondents had originally argued that the petitioner's ineffective assistance of counsel claims were procedurally barred. After the Eleventh Circuit Court of Appeals remanded the case to this court for a determination of the merits of the ineffective assistance of counsel claims, it became necessary for the court to have the transcript so that the merits of the claims could be determined. The court could not have examined the petitioner's claims without the transcript. If the respondents had not submitted the transcript when they did, the court would have ordered them to submit it.

Roberts requests the court to examine page seventeen of the report and recommendation, where the magistrate judge "rule[d] that petitioner's trial att[orney] is not responceable [sic] for investigating and examining the conduct of the arresting officers at the stage of interragation [sic] an[d] arrest." However, he does not indicate why he is drawing the court's attention to this page. However, the court has examined page seventeen of the report and recommendation. On that page, the magistrate judge set forth the following:

> The petitioner's first ineffective assistance of counsel claim, as stated by him, is that his attorney was ineffective because he "allowed a statement to be altered into a confession by detective in arrest warrant." Roberts has offered nothing to explain what he means by this claim. The Eleventh Circuit Court of Appeals interpreted Roberts' claim to be that his trial counsel was ineffective because "he allowed a statement to be altered into a confession on which the arrest warrant was based." *Roberts*, 217 F.3d at 1339 n. 3. If this is in fact

8

what the petitioner meant by his claim, then the claim has no merit. The petitioner's trial counsel, Joe Powell, was not representing the petitioner at the time he made his statements to the police on February 13, 1990, or when the petitioner was arrested on February 14, 1990. Moreover, there is nothing in the record to suggest that Roberts was represented by counsel at all prior to his arrest on February 14, 1990. Therefore, neither Powell nor any of Roberts' other attorneys could have "allowed [the petitioner's] statement to be altered into a confession on which the arrest warrant was based."

The court finds nothing wrong with this conclusion. The magistrate judge simply addressed the claim raised by the petitioner, as it was interpreted by the Eleventh Circuit Court of Appeals. The magistrate judge went on to address all of the other interpretations of the claim that could be made,[4] concluding that no matter what the petitioner actually meant by his claim, the claim had no merit. The magistrate judge went even further to conclude that even if counsel's performance fell below constitutional standards for "allow[ing] a statement to be altered into a confession by detective in arrest warrant," there was no evidence of the prejudice necessary to succeed on the ineffective assistance of counsel claim. There is nothing out of place with respect to the portion of page seventeen referenced by the petitioner.

The petitioner also asks the court to examine another portion of page seventeen of the report and recommendation, "page 17 (copy of petitioner['s] statement alleged) 'Roberts said at the time Mr. Jones outed [sic] his vehicle he had an ideal [sic] that Clifford Jones was going to rob the Shell Food at the end of the all[e]y' ([t]his is a[n] alleged confession)." Roberts maintains that his signed statement "does not state what the magistrate has stated." He adds

---

[4] The magistrate judge also addressed this claim as a claim that Roberts' trial attorney was ineffective for not arguing at trial that Officer Pettey had altered Roberts' statement, or that he used incorrect or intentionally false information in the affidavit upon which the arrest warrant was based, and as a claim that Roberts' trial attorney was ineffective for allowing the statement to be used at trial.

that "petitioner's signed statement and the quote of what the magistrate has briefed is not the same, yet the record fails to show petitioner's true statement as the magistrate ordered petitioner not to add new documents." It appears that the petitioner is referring to the following quoted language that appeared on page seventeen of the report and recommendation:

> Mr. Roberts said at the time Mr. Jones exited his vehicle he had an ideal [sic] that Clifford Jones was going to rob the Shell Food Store at the end of the alley. Mr. Roberts said Clifford Jones returned a few minutes later with a sum of money and food stamps. Mr. Roberts said he knew that Clifford Jones had robbed the Shell Food Mart on West Moulton Street.

Apparently, Roberts believes that the magistrate judge indicated that this was a part of one of his confessions. However, the magistrate judge made it clear in the report and recommendation that the quoted language was taken from page 11 of *Respondents' Exhibit G*, the affidavit upon which the arrest warrant was based.

Furthermore, contrary to what the petitioner has alleged, the record does "show petitioner's true statement" or confession. The petitioner's second statement was read into the record at trial and it is now a part of the record in this case. It can be found on page 147 of the trial transcript, which is contained in *Respondent's Exhibit G*. Additionally, the petitioner, himself, admitted at trial that he made the statement and that he said in the statement that he had an idea of what Mr. Jones was going to do. *Respondents' Exhibit G*, pp. 192, 193, 197-98.

Roberts makes more arguments in his objections, none of which have any merit. He also reiterates his claims and the arguments he has raised in support of them. They had no merit before the report and recommendation was entered and they have no merit now.

10

The court has considered the entire file in this action together with the Magistrate Judge's Report and Recommendation and the objections of the petitioner and has reached an independent conclusion that the Magistrate Judge's Report and Recommendation is due to be adopted and approved.   The court hereby adopts and approves the findings and recommendation of the magistrate judge as the findings and conclusions of the court.   In accord with the recommendation, this petition for writ of habeas corpus is due to be dismissed.   An appropriate order will be entered.

DONE this _____5_____ day of February, 2002.


_____
**WILLIAM M. ACKER, JR.,**
UNITED STATES DISTRICT JUDGE

11